**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

PHILLIP HERRINGTON,

    Plaintiff,

vs.                                                     CASE NO. 3:08-cv-948-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## ORDER AND OPINION

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for a period of disability and disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #14) and Defendant filed a brief in support of the decision to deny disability benefits (Doc. #15). Additionally, Plaintiff filed a reply brief (Doc. #20) and Defendant filed a sur-reply brief (Doc. #21). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated August 11, 2008 (Doc. #9). The Commissioner has filed the transcript of the proceedings (hereafter referred to as "Tr." followed by the appropriate page number).

The undersigned has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings. Upon review of the record, the

undersigned found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the undersigned in making his determinations. Accordingly, the matter has been decided on the written record. For the reasons set forth herein, the decision of the Commissioner is **REVERSED and REMANDED**.

## I. Procedural History

In the instant action, Plaintiff protectively filed an application for DIB and SSI on September 30, 2004, alleging disability from a work-related injury that occurred on September 16, 1999 (Tr. 419). In a decision dated March 26, 2008, Administrative Law Judge William H. Greer (the "ALJ") determined Plaintiff was not disabled from September 16, 1999 through the date of the decision (Tr. 419). With respect to Plaintiff's claim for DIB, his date last insured was September 31, 2001 (Tr. 419).

After the denial of his claim, Plaintiff requested that the Appeals Council review the ALJ's March 26, 2008 decision (Tr. 437). Upon review, the Appeals Council found in Plaintiff's favor with respect to Plaintiff's SSI claim, but not in his favor regarding his claim for DIB (Tr. 441-44). Consequently, by order dated August 1, 2008, the Appeals Council remanded the case to the ALJ insofar as his decision relates to Plaintiff's application for SSI benefits (Tr. 441-44). By separate notice on the same date, the Appeals Council denied review of Plaintiff's claim for DIB (Tr. 445-47).[1]

In determining remand of Plaintiff's SSI claim was appropriate, the Appeals Council found: (1) the ALJ erred when he determined Plaintiff's chronic low back pain was a severe impairment because, "pain is a symptom, not a medically determinable impairment"; (2) the

---

[1]The record does not reflect whether the ALJ has held an additional administrative hearing or issued a new decision with respect to Plaintiff's SSI claim.

ALJ erred by failing to attribute any functional limitations to Plaintiff's depression, an impairment the ALJ found to be severe; (3) the ALJ erred by failing to reconcile his residual functional capacity ("RFC") finding with the consultative opinions of Drs. Choisser, Dehgan, and Maida (T. 441-42).[2]

With respect to Plaintiff's claim for DIB, the Appeals Council's stated reason for denying review was that it "found no reason under our rules to review the Administrative Law Judge's opinion" (Tr. 445). Plaintiff thereafter filed the instant action, seeking review of the Commissioner's decision as to his application for DIB. This matter is now ripe for review under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A).

For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits. *Patterson v. Bowen*, 799 F.2d 1455, 1456, n. 1 (11th Cir. 1986). The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. §§ 404.1520(a)(4)(i-v); 416.920(a)(4)(i-v)[3]; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through Step 4, while

---

[2]These doctors examined Plaintiff subsequent to the expiration of Plaintiff's date last insured.

[3]All references made to 20 C.F.R. will be to the 2009 edition unless otherwise specified.

at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by

substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require"). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations. 20 C.F.R. §§ 404.1512(c); 416.912(c).

### III. Discussion

As an initial matter, the Court's independent review of the record as a whole, as required under *Bloodsworth*, 703 F.2d at 1239, reveals the ALJ's decision contains various omissions, inconsistencies, and misstatements that bring into question the ALJ's analysis. The Court would also note that any one of these deficiencies, standing alone, might not have amounted to reversible error; however, as will be discussed more fully below, the Court finds such deficiencies, in combination with other errors present in the decision, require remand in this instance.

In his decision, the ALJ determined that Plaintiff had the following severe impairments: "chronic low back pain, status post spinal fusion, tendonitis bilateral

5

shoulders, internal derangement of knees, depression, and polysubstance abuse in remission" (Tr. 421). After finding that his impairments did not meet or equal the criteria found in Appendix 1, Subpart P, Regulations No. 4 (the "Listings"), the ALJ determined that Plaintiff retained the following residual functional capacity ("RFC"):

> Light work as defined in 20 CFR 404.1567(b) and 416.957(b). The claimant [Plaintiff] can occasionally use his hands for pushing or pulling; use foot controls; and climb stairs and ramps and balance and stoop. The claimant can never crawl or work at heights. The claimant can use his hands frequently to handle, finger and feel. The claimant can never climb ladders or scaffolds, kneel, crouch, and/or crawl. The claimant can occasionally be exposed to moving mechanical parts, humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme hot or cold, and vibrations.

(Tr. 425).

The ALJ next found, with the aid of a vocational expert ("VE"), that Plaintiff could not perform his past relevant work as a building maintenance repairer, fast food worker, or auto service mechanic (Tr. 428). At Step 5 of the sequential evaluation process the ALJ determined Plaintiff could perform jobs that exist in significant numbers in the national economy, a representative sample of such jobs being: ticket taker, food and beverage order clerk, and cutter/paster (Tr. 429). Thus, a finding of not disabled was entered (Tr. 429-30).

The Appeals Council remanded only the SSI portion of Plaintiff's claim, finding the ALJ improperly analyzed Plaintiff's mental impairments and failed to properly address various medical opinions of record that relate to Plaintiff's claim for SSI (Tr. 441-44). In his appeal to this Court, Plaintiff contends the ALJ's errors (as found by the Appeals Council) regarding Plaintiff's RFC determination apply equally to both of his disability claims (*i.e.* his applications for DIB and SSI); therefore, his claims should not have been separated on

remand by the Appeals Council (Doc. #14 at 1-5, 12-14). Plaintiff further maintains the ALJ erred by failing to address the medical opinion evidence from his treating orthopedist and surgeon, Dr. Keller, who indicated Plaintiff was unable to work for more than a two (2) year period, beginning on the date of his injury which was prior to the expiration of his date last insured (Doc. #14 at 21-25). The Court is persuaded by these arguments as stated herein.

To illustrate, the evidence of record reveals that Plaintiff was born in June of 1972, making him 35 years old as of the date of the administrative hearing (Tr. 470). He has a high school education and alleges an inability to work since September 16, 1999 (Tr. 69; Doc. #14). Plaintiff also alleges that symptoms related to depression contribute to his inability to work (Tr. 69).

Approximately three months later, on September 16, 1999, Plaintiff presented to the emergency room seeking treatment for back pain following an injury at work while lifting heavy boxes (Tr. 294-96). A back sprain was diagnosed and Plaintiff was prescribed narcotic pain medication (Lortab) and a muscle relaxant (Flexeril) (Tr. 294-96).

On December 30, 1999, Plaintiff was involuntarily admitted to Jacksonville's Mental Health Resource Center after calling to report suicidal thoughts (Tr. 142-52). Plaintiff stated that he was depressed secondary to his inability to work due to severe pain and admitted to a history of prior suicide attempts (Tr. 142). At the time of his discharge, on January 3, 2000, Plaintiff was diagnosed with adjustment disorder with depressed mood; rule-out major depressive disorder, recurrent, moderate with history of psychosis; alcohol abuse; and personality disorder not otherwise specified (Tr. 149-52). Upon admission, Plaintiff was assessed a Global Assessment of Functioning ("GAF") score of 40, whereas

upon discharge he was assessed a GAF score of 55.[4]

On January 26, 2000, Michael Scharf, M.D. ("Dr. Scharf"), of the Jacksonville Orthopaedic Institute, conducted an orthopedic evaluation of Plaintiff following complaints of persistent lower back pain, which Plaintiff maintained had been present since September 16, 1999 (the date of his work-related injury) (Tr. 202). Plaintiff reported to Dr. Scharf that physical therapy and medications were not adequately controlling his pain (Tr. 202). He additionally complained of neck and upper back pain (Tr. 202). Dr. Scharf reviewed a recent MRI of Plaintiff's spine and his impression was: "significant degenerative disk disease" (Tr. 202). At that time, Dr. Scharf scheduled Plaintiff for a discogram, deemed Plaintiff "unable to work," and reported his work status as: "[t]emporary total disability" (Tr. 201-02).[5]

On June 20, 2000, apparently after requesting a change in physicians, Plaintiff came under the care of another physician at the Jacksonville Orthopaedic Institute, Gregory C. Keller, M.D. ("Dr. Keller") (Tr. 200). Dr. Keller's impression was "mechanical back pain" (Tr. 199). With respect to Plaintiff's x-ray studies, Dr. Keller noted: "[p]lain films of the lumbar

---

[4]The Global Assessment of Functioning Scale was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100. A GAF score of 41-50 describes "serious symptoms" and includes "serious impairment in the social, occupational or school functioning." A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning. A GAF score of 61-70 indicates "some mild symptoms," but generally functioning "pretty well, [and] has some meaningful interpersonal relationships." A GAF score of 71-80 indicates that if symptoms are present, they are transient and expectable reactions to psycho-social stressors with no more than slight impairment in social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 32-34 (4th ed., American Psychiatric Assoc. 2000).

[5]A discogram is an invasive diagnostic test that uses x-rays to examine the intervertebral discs of the spine. A special dye is injected into the injured disc or series of discs. The dye makes the disc visible on a fluoroscope monitor and x-ray film. Discograms are used to locate precisely which discs are damaged and are causing back pain. Mayfield Clinic, http://www.mayfieldclinic.com/PE-DISCO.htm (last visited March 20, 2010). The record indicates that Plaintiff attempted to obtain a discogram, but that he could not "tolerate" the pain associated with the procedure—he apparently claimed that he was not given intravenous sedation, as is routinely done (*see* Tr. 200).

spine show no significant disc space narrowing, although there is some subtle narrowing at L4-5. I do not have the MRI, but the report apparently reveals degenerative changes at L4-5" (Tr. 199-200). Dr. Keller advised Plaintiff of the importance of obtaining discogram images and Plaintiff agreed to attempt another discogram study (Tr. 199). Dr. Keller reported that Plaintiff's work status as: "[t]emporary total disability" (T. 199). The record next reveals that for a multitude of reasons, including Plaintiff being incarcerated, Plaintiff either missed or had to reschedule numerous discogram appointments (*see* Tr. 198-96).

On November 11, 2000, Plaintiff presented to Dr. Keller and it was noted that a discogram study had finally been performed; however, the results of the study were not yet available (Tr. 196). Dr. Keller again reported Plaintiff's work status as: "[t]emporary total disability" (Tr. 196). On November 14, 2000, due to what appears to be inconsistent discogram results, Dr. Keller decided to schedule another discogram of Plaintiff's spine, which he decided to perform himself (*see* Tr. 195). On January 31, 2001, Dr. Keller reported that the discogram he performed reproduced Plaintiff's complaints of pain at the L4-5 and L5-S1 levels and demonstrated "some leakage" of the fluoroscopic dye (Tr. 193); *see* n.4, *supra*.

On February 6, 2001, Dr. Keller reported degenerative changes, and that a CT scan "demonstrated a central tear at both the 4-5 and 5-1 level through the posterior annulus" (Tr. 192). Dr. Keller informed Plaintiff he was a candidate for spinal fusion surgery but that Plaintiff's posterior annular tear should also be amenable to IDET treatment (Tr. 193).[6] Dr.

---

[6]Intradiscal Electrothermal Therapy (or "IDET") is a procedure that uses a probe, which is inserted into the affected disc to heat the tissue from within. Heating the inside of the disc shrinks collagen fibers and destroys pain receptors. The probe also cauterizes the small nerve fibers in the periphery of the disc. Pain Treatment Center, http://www.paintreatmentcenter.com/intradiscal_electrothermal_annuloplasty.htm (last visited March 22, 2010).

Keller again noted that Plaintiff remained temporally totally disabled (Tr. 192). On February 23, 2001, Plaintiff elected to have a lumbar fusion surgery rather than undergo IDET treatment (Tr. 192).

On June 20, 2001, Dr. Keller performed an anterior lumbar interbody fusion (Tr. 157-58). Subsequent to the surgery, on June 26, 2001, Plaintiff called Dr. Keller's office to report that he was experiencing "back spasms" (Tr. 190). He was given a refill of Valium (Tr. 190). On June 28, 2000, Plaintiff returned to Dr. Keller's office for a follow-up visit after his wife called the previous evening to report that Plaintiff may have developed an infection (Tr. 189). Upon examination, Plaintiff's surgical site exhibited, "serious drainage from the wound itself" (Tr. 189). During the visit, the wound drainage "became more copious" and a towel had to be used to absorb the excess fluid as "4x4's were insufficient for the job" (Tr. 189). Plaintiff was admitted to the hospital overnight for intravenous antibiotics and observation of the surgical wound (Tr. 188-89).

On August 23, 2001, Dr. Keller noted that Plaintiff's surgical wound had "finally healed" (Tr. 187). Dr. Keller prescribed Plaintiff a cane and a bone stimulator (Tr. 187).[7] Dr. Keller reported that Plaintiff remained temporally totally disabled (Tr. 186-87). On October 4, 2001, Plaintiff again presented to Dr. Keller (Tr. 186). X-rays were taken which revealed Plaintiff's surgical hardware was in good position, "but without a lot of fusion mass" (Tr. 186). Dr. Keller reported that Plaintiff remained temporally totally disabled (Tr. 186). On November 29, 2001, Dr. Keller reported:

---

[7]Plaintiff requested that his walker be replaced by a cane and Dr. Keller ordered a bone stimulator because Plaintiff continued to smoke cigarettes despite being warned of its adverse effects on the healing process (Tr. 187).

> X-rays taken today show that he [Plaintiff] still does not have much in the way of posterolateral fusion mass. I explained the significance of this to him and strongly recommended that he stop smoking as well as continuing to wear the bone stimulator. I am concerned about the possibility of having to regraft this if he does not form more bone in the next couple of months. [...] I want to see him back in eight weeks. He remains at TTD [temporary total disability] in the interim.

(Tr. 184-85).

Approximately eight weeks later, on January 24, 2002, Plaintiff presented to Dr. Keller with complaints of continued back pain (Tr. 183, 185). X-rays showed "gradually maturing fusion mass" (Tr. 183). Dr. Keller stated "I will keep him at TTD for now, but anticipate trying to get him back to work at his next follow up visit in two months (Tr. 183). This is the last treatment note from Dr. Keller.

The Court would point out that from the date of Plaintiff's injury (September 16, 1999) to the date of the last treatment notation by Dr. Keller (January 24, 2002), a time period of over two (2) years had elapsed. The evidence of record regarding this time period indicates that Plaintiff's treating physicians (Drs. Scharf and Keller) found Plaintiff was not able to work (*see* Tr. 183-202).

In order for a claimant to be found disabled, he or she must show they were under a disability for at least 12 consecutive months. 20 C.F.R. §§ 404.1505(a); 416.901(a). The Social Security Administration ("SSA") recognizes, however, that there are instances where a claimant, before adjudication of his or her claim, may have met the durational requirement and then subsequently improved, such that they no longer meet the definition of disability. The SSA's Program Operations Manual System ("POMS") provides as follows:

> When evidence establishes that the claimant was unable to engage in SGA [substantial gainful activity] for a continuous period of 12 months, but by the time the determination is made, the claimant is no longer disabled, a closed

11

period may be indicated, if all other requirements are met.

§ DI 25510.001 (Jan. 30, 1997).

Under the facts presented, the Court finds the ALJ should have, at a minimum, explained his reason(s) for not considering Plaintiff for a closed period of disability (particularly in view of the fact the ALJ determined Plaintiff's earnings record shows he was substantially gainfully employed from January 2006 through August 2006 (Tr. 421; *see also* Tr. 63-68)). The Court finds this omission alone would require remand in this instance because the ALJ did not even mention Dr. Keller or his opinion(s) regarding Plaintiff's work status in the body of the decision.

While the ALJ did mention that Dr. Scharf noted Plaintiff was unable to work due to degenerative disc disease, the ALJ then stated that Dr. Scharf's assessment "is not supported by the objective medical evidence" (Tr. 427). In support of this assertion, the ALJ merely stated, without citing to the record, that Dr. Scharf's treatment records reveal that Plaintiff "had x-rays that did not show significant disc space narrowing and only subtle narrowing at L4-L5"(Tr. 427) (this is a mischaracterization of the record evidence and, in addition, is a quote from Dr. Keller rather than Dr. Scharf (*see* Tr. 199-202)).

To illustrate, on January 26, 2000, Dr. Scharf reported, *inter alia*, that "[a]n MRI of [Plaintiff's] lumbar spine, dated 12-2-99, shows significant disc degeneration at L4-5" (Tr. 202). Dr. Scharf then ordered a discogram which, as noted above, was delayed for quite some time (*see* Tr. 200-02). On June 20, 2000, Dr. Keller took over Plaintiff's treatment and reported, in part, that: "[p]lain films of the lumbar spine show no significant disc space narrowing, although there is some subtle narrowing at L4-5" (Tr. 200). The remaining portion of Dr. Keller's statement, however, is as follows: "I do not have the MRI, but the

report apparently reveals degenerative changes at the L4-5" (Tr. 199).

It is also important to note that subsequent to this initial visit, Dr. Keller: (1) treated Plaintiff for over eighteen (18) months; (2) ordered two discograms studies (one of which he performed himself); (3) found Plaintiff suffered degenerative changes and had a central tear at both the 4-5 and 5-1 level through the posterior annulus which produced leakage; (4) recommended and performed a spinal fusion surgery; (4) treated Plaintiff for a post operative infection; (5) felt at one point that he might have to re-fuse Plaintiff's discs due to a lack of post surgical bone mass formation; and (6) noted throughout his treatment of Plaintiff that, in his opinion, Plaintiff remained temporally totally disabled (*see* Tr. 183-200).

Chapter 20, Code of Federal Regulations, Sections 404.1520(3) and 416.920(3), provide that the Social Security Administration, "will consider *all* evidence in your [the claimant's] case record when we [the SSA] make a determination or decision whether you are disabled" *(emphasis added)*. Consequently, an ALJ cannot pick and choose from the evidence in order to support his conclusions. *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("[t]he ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability") (citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984)); *see also Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence").

Furthermore, substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a

claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ, however, may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d at 583.

The Eleventh Circuit has concluded that "good cause" for discounting a treating physician's opinion exists when the opinion is not bolstered by the evidence, is contrary to the evidence, or when the treating physician's opinion is inconsistent with his or her own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). If an ALJ elects to disregard the medical opinion of a treating physician, then he must clearly articulate the reasons for so doing. *Id.* Here, the ALJ does not even mention Dr. Keller.

In this instance, the Court finds the ALJ committed reversible error with respect to Plaintiff's claim for DIB by ignoring a significant amount of medical evidence from Plaintiff's treating physicians which supports his contention that he may at least be entitled to a closed period of disability (*see* Doc. #14 at 23-25). The ALJ's stated reasons for discounting Dr. Scharf's opinions (or for implicitly discounting Dr. Keller's opinions) are wholly insufficient, as stated herein. In *Baker v. Barnhart*, Case No. 03-C-2291, 2004 WL 2032316 (N.D. Ill. Sept. 9, 2004),[8] the court ordered the case be remanded to the Commissioner where the ALJ misstated the record and failed to address limitations found by the plaintiff's treating physician.

---

[8] Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

Further, the Court would note that a physical residual functional capacity assessments filled out by William V. Choisser, M.D., J.D. ("Dr. Choisser") (one of the several consultative assessments the Appeals Council found was inadequately considered by the ALJ) indicates Plaintiff's functional limitations have been present since "1999" (Tr. 325; *see also* Tr. 442).[9] This opinion was also ignored by the ALJ, and the Court finds it to be relevant to Plaintiff's claim for DIB, as it indicates Plaintiff may have been unable to work since the date of his work-related injury (*see* Tr. 422-29).

In addition to ignoring the aforementioned evidence, the ALJ made various misstatements which contribute to making a meaningful review of his decision untenable. Specifically, at Step 1 of the sequential evaluation process the ALJ stated that Plaintiff "has not engaged in substantial gainful activity since September 16, 1999, the alleged onset date" (Tr. 421). In the following sentence, however, the ALJ states: "[Plaintiff's] earnings record shows [Plaintiff] worked from January 2006 through August 2006. During this time, he earned $7,247. The undersigned [the ALJ] finds that the claimant engaged in substantial gainful activity during this time." (Tr. 421). The Court would note that these two statements are incongruent. Further, when referring to the limitations assessed by Dr. Choisser, the ALJ stated, "Dr. Choisser did not indicate the claimant [Plaintiff] would be precluded from all work activity. Although his [Dr. Choisser's] assessed limitations would preclude any work activity." (Tr. 427). These two statements are likewise incongruent.

---

[9]This medical questionnaire was filled out by Dr. Choisser on August 20, 2007 (Tr. 321-25). It appears, however, that the Appeals Council did not recognize that Dr. Choisser stated Plaintiff's assessed limitations were applicable since 1999 since they too did not mention this fact in their opinion (*see* Tr. 442).

15

Moreover, when assessing the mental limitations that stem from Plaintiff's depression, the ALJ found Plaintiff suffered from: "mild" restriction in activities of daily living; "moderate" difficulties in social functioning; "moderate" difficulties in maintaining persistence or pace; and "1 or 2" episodes of decompensation (Tr. 425). The ALJ then stated that he translated the above referenced limitations into Plaintiff's RFC assessment (Tr. 425). The following sentence is Plaintiff's RFC assessment; however, it contains only exertional and non-exertional physical limitations—there is no mention of any mental limitations, *supra* (*see* Tr. 425).[10]

Noteworthy, is that the Appeals Council found the ALJ's omission of assessed mental limitations from Plaintiff's RFC required remand (but only as to his claim for SSI) (Tr. 441-42). Since the ALJ never distinguished his analysis with respect to his findings as they relate to Plaintiff's date last insured (September 31, 2001), and since the Court has found the ALJ failed to adequately address Plaintiff's claim for DIB with respect to his back injury, the Court finds it necessary to require re-assessment of both Plaintiff's physical and mental impairments in relation to his claim for DIB.

The Court finds this course of action to be necessary because the noted legal and factual errors, *supra*, belie a thorough review of the record, and make it impossible to determine whether the ALJ's decision with respect to Plaintiff's impairments in combination is based upon substantial evidence.

The Eleventh Circuit has held that where "a claimant has alleged a multitude of impairments, a claim for social security benefits based on disability may lie even though

---

[10]The Court would also point out that, when assessing Plaintiff's credibility, the ALJ at one point refers to Plaintiff as "she" (Tr. 426).

16

none of the impairments, considered individually, is disabling." *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). An ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having severe hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).

Dr. Choisser evaluated Plaintiff on three separate occasions and assessed extremely restrictive functional limitations (*see* Tr. 224-27, 319-25, 407-15). In addition, Dr. Choisser stated that Plaintiff's depression affects his physical condition and contributes to the severity of his symptoms and functional limitations (Tr. 322). As noted above, Dr. Choisser reported that Plaintiff's assessed limitations have been present since 1999 (Tr. 325). When viewing this evidence in light of the fact Plaintiff was involuntarily hospitalized in 1999 due to his depression, the Court finds it necessary for the Commissioner to re-evaluate Plaintiff's mental and physical impairments as they relate to Plaintiff's claim for DIB.

## IV. Conclusion

While each of the cited discrepancies of record, when viewed individually, may not have constituted such error as to require reversal, the various misstatements and omissions, combined with the ALJ's failure to properly discount the opinion evidence of Plaintiff's treating physicians, reveal both legal error and an inaccurate review of the record. Thus, the Court is unable to find the decision of the ALJ is based on substantial evidence, and this case must be **REMANDED** to the Commissioner for re-evaluation of the record as a whole.

On remand, the Commissioner may hold other proceedings as he deems necessary, but in any event shall consider the opinion evidence of Drs. Scharf, Keller and Choisser, and re-assess Plaintiff's residual functional capacity in light of this opinion.

Plaintiff is cautioned, however, that this opinion does not suggest Plaintiff is entitled to disability benefits. Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Plaintiff is disabled within the meaning of the Social Security Act. *Phillips*, 357 F.3d at 244. In accordance with binding precedent, the Court has not and may not re-weigh the evidence to make its own determination on Plaintiff's asserted disability.

## V. Directions as to Judgment

The Clerk of Court is directed to enter judgment consistent with this Order and Opinion and, thereafter, to close the file. The judgment shall state that if Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) must be filled within fourteen (14) days of the Commissioner's final decision to award benefits. *See* Fed. R. Civ. P. 54(d)(2)(B); M.D. Fla. Loc. R. 4.18(a); *Bergen v. Comm'r of Soc. Security*, 454 F.3d 1273, 1278 (11th Cir. 2006).

**DONE AND ORDERED** at Jacksonville, Florida this 24th day of March, 2010.

Copies to all counsel of record

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge